# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALEJANDRO REYES-PANTOJA,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Respondent. | **MEMORANDUM DECISION AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255**<br><br>Case No. 2:24-cv-765-CW<br><br>Hon. Clark Waddoups |

　　　　This matter is before the court on Alejandro Reyes-Pantoja's Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"). (ECF No. 1.). Asserting that his counsel was ineffective during the sentencing phase of his criminal proceeding, Mr. Reyes's § 2255 Motion asks the court to vacate his conviction and sentence. (*See id.* at 14.) After receiving and initially reviewing Mr. Reyes' § 2255 Motion, the court ordered the United States to file a response. (ECF No. 3.)

　　　　Now having carefully reviewed Mr. Reyes' § 2255 Motion, the response of the United States, and the applicable record,[1] the court has determined that Mr. Reyes

---

[1]　　　No evidentiary hearing was warranted. *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); 28 U.S.C. § 2255 (providing that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Here, Mr. Reyes has failed to demonstrate the existence of a factual dispute that creates a genuine issue. He has also failed to come

is not entitled to relief under § 2255. More specifically, because the record in Mr. Reyes' criminal proceeding clearly demonstrates that he knowingly, intelligently, and voluntarily pleaded guilty with a full understanding of his plea and its direct consequences, his due process rights were not violated. Similarly, Mr. Reyes' right to effective assistance of counsel was not violated because the record establishes that Mr. Reye's was not prejudiced. Accordingly, and for the reasons discussed in more detail below, the court DENIES Mr. Reyes' § 2255Motion.

## PROCEDURAL BACKGROUND

Mr. Reyes was arrested on August 1, 2022, when, following a traffic stop, approximately 29 pounds of methamphetamine were found in the car he was driving. (*See U.S. v. Reyes-Pantoja*, 2:22-cr-283 (D. Utah) ["Reyes Crim."] ECF No. 1; ECF No. 50 [sealed] at 4–5.) Two days later a criminal complaint was filed alleging that Mr. Reyes possessed methamphetamine with intent to distribute, followed by an Indictment on Augst 10,2022. (See Reys Crim. ECF Nos. 1 & 13.)

On April 14, 2023, a Felony Information was filed charging Mr. Reyes with the sole count of "knowingly and intentionally possessing with intent to distribute a mixture and substance containing a detectable amount of Methamphetamine … all in violation of 21 U.S.C. § 841(a)(1) and punishable pursuant to 21 U.S.C. §841(b)(1)(C)." (Reyes Crim. ECF No. 37 at 1–2.)

---

forward with independent indicia in support of the likely merit of his claims. Therefore, he has failed to demonstrate he is entitled to an evidentiary hearing.

On May 22, 2023, Mr. Reyes, as part of a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement with the United States, entered a guilty plea to the sole count of the Felony Information. (Reyes Crim. ECF No. 42.) The Rule 11(c)(1)(C) agreement filed with the court that same day contained a stipulation that the sentence to be imposed by the court would be in the range of 63 to 97 months. (Reyes Crim., ECF 44 at 4.) The presentence reports later prepared for Mr. Reyes following his guilty plea (collectively the "PSR") identified an adjusted criminal offense level of 29 with a criminal history score of 1, which under the Sentencing Guidelines computed to a guidelines range sentence of 87 to 108 months. (*See* Reyes Crim. ECF No. 45 [sealed] at 6–7; ECF No. 50 [sealed] at 6–7.)

Pursuant to his guilty plea, and consistent with his Rule 11(c)(1)(C) agreement, on September 25, 2023, the court sentenced Mr. Reyes to a 63-month term of imprisonment and 36 months of supervised release. (*See* Reyes Crim. ECF Nos. 49 & 51.)

On July 8, 2024, Mr. Reyes filed a motion pursuant to 18 U.S.C. § 3582(c)(2) seeking a reduction in his sentence because a change in the Sentencing Guidelines made retroactive would reduce his offense level by two, which in turn would lead to a lower calculated guidelines range and would therefore result in a lower sentence imposed by the court. (*See* Reyes Crim. ECF No. 53.) On August 6, 2024, the court denied that motion. (*See* Reyes Crim. ECF No. 55.) Subsequently, on October 10, 2024, less than one year after the date on which his judgment of conviction became

final, Mr. Reyes filed the § 2255 Motion that is now before the court. (*See* ECF No. 1.).

In his § 2255 Motion Mr. Reyes asserts that his counsel provided ineffective assistance during plea negotiations and sentencing because: (1) his counsel did not challenge the 1 point criminal history calculation contained in the PSR for a trespassing offense; and (2) his counsel did not advise him of impact of an announced, but not yet effective, amendment of the Sentencing Guidelines included at § 4C1.1, which, if applied, may have resulted in a 2-level decrease in his guidelines offense level (*i.e.*, from a level 29 to a level 27). (*See* ECF No. 1 at 10–11.) Mr. Reyes claims that his counsel's performance was constitutionally deficient because it was objectively unreasonable for his counsel not to have raised these issues with him or the court and that it is reasonably probable that, but for his counsel's errors, the sentencing outcome for Mr. Reyes would have been different. (*Id.* at 8, 11–14.)

## LEGAL STANDARDS

In order to prevail on his § 2255 Motion, Mr. Reyes must establish that (1) his counsel's performance fell below an objective standard of reasonableness and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 688–694 (1984); *United States v. Babcock*, 40 F.4th 1172, 1176 (10th Cir. 2022).

When considering an ineffective assistance claim under § 2255, the court starts with the presumption that "counsel's conduct f[ell] within the wide range of

reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, in order to prevail on his ineffective counsel claims, Mr. Reyes must show that "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Deficient performance occurs when counsel's representation falls "below an objective standard of reasonableness." *Id.* at 688.

And as noted, even if Mr. Reyes establishes that his counsel's performance was objectively unreasonable, he must also demonstrate that he was prejudiced by the identified deficiencies. Prejudice in this context means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where, as here, the alleged deficiencies concern plea negotiations and sentencing, the prejudice requirement can be established by showing that counsel's alleged deficient performance resulted in a more severe sentence. *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

## ANALYSIS

Even assuming, without deciding, that Mr. Reyes has satisfied the first prong of the *Strickland* test—*i.e.*, that his counsel's failure to recognize and/or challenge the criminal history calculation and failure to advise him as to the potential impact of the upcoming amendments to the Sentencing Guidelines when negotiating his plea agreement was objectively unreasonable—he has failed to establish that but for these purported deficiencies his sentence would somehow have been different. *See Strickland*, 466 U.S. at 697 (noting that "there is no reason for a court deciding

an ineffective assistance claim to ... address both components of the inquiry if the [petitioner] makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed").

    A. *Mr. Reyes Cannot Establish Prejudice*

Mr. Reyes' basic prejudice argument is that he would not have assented to a sentencing range of 63 to 97 months in his Rule 11(c)(1)(C) agreement—and, in turn, would not have been sentenced to a 63-month prison term—had his counsel not been objectively deficient. On close review, however, this argument falls apart.

Let's assume counsel timely and successfully challenged the inclusion of Mr. Reyes' 2016 criminal trespass conviction in his criminal history score.[2] As Mr.

---

[2] It appears that such a challenge would not have been without merit. Under § 4A1.2(c) of the Sentencing Guidelines, a sentence for a misdemeanor offense of criminal trespass is only counted in the criminal history score if the sentence "was a term of probation of more than one year or a term of imprisonment of at least thirty days." According to the PSR, Mr. Reyes was not sentenced to probation for more than one year and was not sentenced to any term of imprisonment under the criminal trespass charge, but instead entered a "Plea diversion program" without any other sentence. (*See* Reyes Crim ECF No. 50 [sealed] at 7 ¶31). Although the PSR cited U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(f) as authority for including the sentence, that section states that while "diversionary disposition[s] resulting from a finding or admission of guilt" are to be counted, any "[d]iversion from the judicial process without a finding of guilt" is not to be counted. Here is there is no indication in the PSR that Mr. Reyes' diversionary sentence included some judicial finding of guilt or an admission of guilt. Assuming there are no other facts concerning this sentence, it appears that had counsel challenged the inclusion of the trespass offense such a challenge may have been successful. *See, e.g., United States v. Porter*, 51 F. Supp. 2d 1168, 1171 (D. Kan. 1999) (holding in the context of the Sentencing Guidelines, that Kansas' diversionary program, which is similar to the Oregon discretionary program applicable to Mr. Reyes, constituted a deferred prosecution that should not be counted under § 4A1.2(f)); *State v. Chamberlain*, 120 P.3d 319, 323 (Kan. 2005) (noting that diversion is "a means to avoid a judgment of criminal guilt"); *cf.* Or. Rev. Stat. Ann. § 137.532(f) (providing that "[e]ntering into a probation agreement does not constitute an admission of guilt and is not sufficient to warrant a finding or adjudication of guilt by a court").

Reyes acknowledges, that would have resulted in a zero criminal history point score. But that change alone would not have altered the range of Mr. Reyes' applicable guidelines sentence. Regardless of whether his history points were zero or 1, Mr. Reyes would still have fallen within Criminal History Category I, which when referenced against his calculated offense level of 29 presents the exact same sentencing range of 87 to 108 months as was identified in the PSR. *See* U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A, Sentencing Table.

Further, and as noted above, the Rule 11(c)(1))(C) agreement provided for a much lower guideline range (63 to 97 months) and the actual sentence imposed on Mr. Reyes was 63 months, which was a significant variance from the otherwise applicable guideline range. Therefore, counsel's failure to challenge the inclusion of the 1 criminal history point, standing alone, does not raise any reasonable probability that Mr. Reyes' actual sentence—which was more than two years below the applicable guideline range—would have been different.

Mr. Reyes other argument is that, assuming counsel had successfully reduced his criminal history score to zero he would have been eligible for 2-level downward adjustment under § 4C1.1 of the Sentencing Guidelines. Although § 4C1.1 was not effective at the time of Mr. Reyes' sentencing on September 25, 2023, it had been submitted to Congress on April 27, 2023, and was scheduled to take effect on November 1, 2023, unless Congress acted to modify or reject it (which Congress did not do). (*See* ECF No. 1 at 6 ¶40.)

Under § 4C1.1, a defendant like Mr. Reyes, whose criminal history score was zero (as adjusted), would be entitled to a 2-level decrease in his offense level. *See* U.S. SENTENCING GUIDELINES MANUAL § 4C1.1(a)(1). If this adjustment was applied Mr. Reyes' offense level would have been reduced to a level 27 with a resultant guideline range of between 70 to 87 months. *See* U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A, Sentencing Table. As noted above, Mr. Reyes was sentenced to a 63-month term of imprisonment, which still fell below the guideline range applicable even if the not yet effective § 4C1.1 adjustment had been applied.

Given these uncontroverted record facts, Mr. Reyes is unable to establish that there is a reasonable probability that his sentence would have been lower. This determination is further buttressed by the policy statement in § 1B1.10(b)(2)(A) of the Sentencing Guidelines. That provision, which addresses sentence reductions arising from an amendment to the Sentencing Guidelines, bars any reduction in the sentence "to a term that is less than the minimum of the amended guideline range." *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(b)(2)(A). As noted, the minimum term under the amended guideline range if the court had applied § 4C1.1 retroactively would have been 70 months. Applying this policy statement, the court would not have been in a position to lower Mr. Reyes' sentence to anything less than 70 months, which is obviously more than the 63-month sentence imposed. Thus, even if counsel was deficient in raising the retroactive application of a § 4C1.1 adjustment, it did not prejudice Mr. Reyes.

Mr. Reyes also argues that he was prejudiced because counsel should have but did not seek a downward departure due to what should have been a zero criminal history score. (*See* ECF No. 1 at 11.) This argument also fails. As part of Amendment 821—the amendment that added § 4C1.1—the commentary to § 5C1.1 of the Sentencing Guidelines ["Imposition of a Term of Imprisonment"] was also changed to address the new zero-point offender adjustment under § 4C1.1.

Specifically, and as applicable in this context, a new application note entitled "Departure for Cases Where the Applicable Guideline Range Overstates the Gravity of the Offense," notes that a departure, "including a departure to a sentence other than a sentence of imprisonment, may be appropriate if the defendant received an adjustment under § 4C1.1 (Adjustment for Certain Zero-Point Offenders) **and** the defendant's applicable guideline range overstates the gravity of the offense because the offense of conviction is not a crime of violence **or** an otherwise serious offense." U.S. SENTENCING GUIDELINES MANUAL § 5C1.1, cmt. n.10(B) (emphasis added).

Mr. Reyes presents no argument and there is no support in the record as to why such a departure would have been warranted here. His offense level, even after applying § 4C1.1, would be a level 27, which still represents a serious offense. In *United States v. Koerber*, 813 F.3d 1262, 1274 & n.19 (10th Cir. 2016), the Tenth Circuit stated that determination of whether an offense is a serious offense turns on if "Congress has provided considerable penalties for th[e] offense[]." The Tenth Circuit further noted that offenses with statutory maximum terms of not more than five years may be considered serious offenses. *See id.* at n.19; *United States v.*

*Zapata*, 433 F. App'x 667, 672 (10th Cir. 2011) (recognizing that "[f]elony drug charges are generally treated as serious offenses"); c*f. United States v. Hernandez*, No. 19-10002-02, 2024 WL 52287, at *4 (D. Kan. Jan. 4, 2024) (denying sentence reduction under 18 U.S.C. § 3553(a) noting that defendant pled guilty "to the serious offenses of conspiracy to distribute methamphetamine" and other crimes); *United States v. Romo-Mendez*, No. 00-10052-0, 2000 WL 1483365, at *1 (D. Kan. Aug. 22, 2000) (denying downward departure noting that the distribution of cocaine is a "serious offense").

    Here Mr. Reyes was convicted of an offense under 21 U.S.C. § 841(a)(1), which carries a maximum term of up to 20 years imprisonment. *See* 21 U.S.C. § 841(b)(1)(C); s*ee also* Reyes Crim. ECF No. 50 at ¶¶2, 53.) And he offers no argument why his conviction for possession with an intent to distribute over 29 pounds of methamphetamine was not an "otherwise serious offense" so that a departure under § 5C1.1 would have been available.[3] Nor does Mr. Reyes offer any argument as to why his 63-month sentence for pleading guilty to possessing over 29 pounds of methamphetamine with an intent to distribute somehow overstates the gravity of his offense.

    In short, Mr. Reyes has presented no argument or evidence to support that he would have received a sentence lower that the sentence he received even if his attorney has raised the potential applicability of a § 4C1.1 adjustment. Rather his

---

[3] These same reasons confirm the correctness of the court's prior order denying Mr. Reyes' motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of the now effective U.S.S.G. § 4C1.1. (*See* Reyes Crim. ECF No. 55.)

claim is simply that his attorney may have been in a better position to bargain for better plea deal if he had leveraged the applicability of § 4C1.1. But such a claim—that he might have gotten a better plea deal—has been held to be insufficient to establish prejudice under *Strickland*. *See Tovar v. United States*, No. 2:21-cv-172, 2023 WL 4865029, at *6 (D.N.M. July 27, 2023) (holding prejudice argument based on claim that attorney should have procured a more favorable plea insufficient under *Strickland*), report and recommendation adopted, 2023 WL 5237466 (D.N.M. Aug. 15, 2023). This court agrees.

To the extent that Mr. Reyes claims that he would have instead entered an open plea rather than the Rule 11(c)(1)(C) plea he agreed to, he also fails to establish the necessary prejudice. In his § 2255 Motion, Mr. Reyes bases his argument on the availability of a "safety valve" reduction under U.S.S.G. § 5C1.1 and 28 U.S.C. § 3553(f).

There are several problems with this argument. As an initial matter, the Information to which Mr. Reyes pleaded guilty recited that he was to be punished under 21 U.S.C. § 841(b)(1)(C). Although there is a potential 20-year maximum sentence under this statutory provision, there is no mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(C). Thus, Mr. Reyes was not subject to any mandatory minimum sentence.[4] The only application of the safety value therefore arose under U.S.S.G. §

---

[4] While Mr. Reyes' § 2255 Motion several times references the potential of a mandatory minimum sentence (*see* ECF No. 1 at 7, 11), he does not expressly argue he was subject to one under the charge to which he entered a plea. Rather, he argues that he was told by his attorney during plea negotiations that if he rejected the plea agreement "he would face punishment of ten years in prison to life." (*See id.* at 3.) The reference to a potential 10-year sentence by his counsel was, however, accurate. At the time he was

2D1.1(b)(18), which provides that the otherwise applicable offense level will be decreased by 2 levels for defendants who meet the safety valve criteria.

Here the PSR informed the court that the safety value was applicable (*see* Reyes Crim., ECF No. 50 at ¶56), and lowered Mr. Reyes' offense level by two levels (from 34 to 32) in consideration of the applicability of the safety value. (*See id.* at ¶19.) Thus, Mr. Reyes did, in fact, receive the benefit of the safety valve.

And finally, Mr. Reyes does not offer any argument or explanation as to how, having not been subject to any mandatory minimum sentence and after having received an offense level reduction based upon the safety value, and having received a sentence below the applicable guidelines sentence, there was a reasonable probability that his sentence would have been lower had he entered an open plea.[5]

---

negotiating a plea, Mr. Reyes was facing an Indictment that did not include any reference to punishing him under 21 U.S.C. § 841(b)(1)(C).  (*See* Reyes Crim. ECF No. 13.)  Because Mr. Reyes was charged in the Indictment with possession with intent to distribute more than 500 grams of methamphetamine, he was, in fact, facing a sentence that carried a mandatory minimum sentence of 10 years and a maximum sentence of life.  *See* 21 U.S.C. § 841(b)(1)(A)(viii) (noting that a person convicted of a violation of 21 U.S.C. § 841(a) involving more than 500 grams of methamphetamine "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life….")  There was nothing mistaken or unreasonable when counsel informed Mr. Reyes as to these ranges of potential punishments.

Those lengthy potential sentences were not removed until the Information against Mr. Reyes was filed on April 14, 2023, which was just three days before he was expected to enter a change of plea.  (*See* ECF Nos. 34 (motion to continue trial on the ground that Mr. Reyes was seeking a non-trial resolution his case and negotiating a potential plea agreement); 36 (court notice of a change of plea hearing for April 17, 2023); 40 (notice of filing Felony Information).)  Thus, it appears that it was the plea negotiations that led to the filing of the Information, which contained a violation concerning only a "detectable" amount of methamphetamine and expressly stated that he was "punishable pursuant to 21 U.S.C. § 841(b)(1)(C)," which in turn allowed Mr. Reyes to avoid the 10-year mandatory minimum and the life maximum sentence.

[5]    For example, Mr. Reyes offers no argument to establish that the court would have departed or varied downward from the otherwise applicable guidelines sentence, and in any event (as discussed in detail above), Mr. Reyes' actual sentence was more than 10% below

Therefore, he cannot establish any prejudice. *See United States v. Orozco-Sanchez*, 804 F. App'x 952, 961 (10th Cir. 2020) (rejecting claim of prejudice predicated on argument that plaintiff would have received a more favorable sentence if he had entered an open plea rather than entering into a Rule 11(c)(1)(C) agreement where plaintiff failed offer grounds to establish a reasonable probability that his sentence would have been lower and, even if he did, the only grounds available to him did not establish prejudice).

*B. Mr. Reyes' Guilty Pleas was an Informed and Voluntary Plea*

As an alternative to his ineffective assistance argument, Mr. Reyes also seeks to have his sentence vacated on the basis that his 5th Amendment Due Process rights were violated because his guilty plea was not "knowing and voluntary." (ECF No. 1 at 12–13.) He broadly grounds this claim on his argument that he was "not fairly apprised" of how his Rule 11(c)(1)(C) plea agreement would affect his rights at sentencing.

Mr. Reyes' argument is undercut by the record in this proceeding. At his change of plea hearing, he affirmatively acknowledged the following:

- that he had all the advice and information he needed to plead guilty;
- that he read and discussed his statement in advance of plea and his plea agreement with his attorney;
- that he was subject to a maximum sentence of 20 years;

---

the applicable guideline range even considering any potential § 4C1.1 adjustment. Nor has he presented any evidence that a more favorable plea agreement was available. To the contrary, Mr. Reyes acknowledges in his § 2255 Motion that his attorney informed him that the government was "unwilling to extend a shorter offer." (*See* ECF No. 1 at 3.)

- that he understood that he had entered into a plea agreement with the United States that called for a sentence of between 63–97 months and that if the court accepted the plea agreement as reasonable, he would be sentenced somewhere within that range;

- that he was entering a plea of guilty to possession with intent to distribute almost 30 pounds (13.6 kg) of methamphetamine that was found in seven different packages in the car he was driving; and

- that he reviewed the facts upon which his plea was based with his attorney.[6]

Based upon this colloquy, the court found that Mr. Reyes was competent and that his "informed and voluntary plea of guilty is supported by facts [Mr. Reyes] admitted on the record to be true." Mr. Reyes also signed a Statement by Defendant in Advance of Plea of Guilty and Plea Agreement Pursuant to Fed R. Crim. P. 11(c)(1)(C), in which he confirmed these representations and acknowledged that his decision to enter his guilty plea "was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea." (*See* Reyes Crim. ECF No. 44 at 7.)

There is nothing in that plea hearing or Mr. Reyes later sentencing hearing that reflects that Mr. Reyes' guilty plea was other than knowing and voluntary.[7] For a plea to be knowing, intelligent, and voluntary the defendant must "have a full understanding of what the plea connotes and of its consequence." *United States v.*

---

[6] The change of plea hearing was not transcribed but the court has reviewed the recording of the hearing.

[7] Notably, Mr. Reyes does not cite to any part of the record in his criminal proceeding in support of his due process argument.

*Dominguez*, 998 F.3d 1094, 1105 (10th Cir. 2021) (citations and quotations omitted). And where, as here, the court conducts a thorough Rule 11 plea colloquy and the defendant says he understands his plea and its direct consequences, the Tenth Circuit recognizes that "such solemn declarations made in open court carry a strong presumption of verity" and "should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *Id*. at 1106 (internal quotation marks omitted).

Mr. Reyes claim is that had he understood how the guidelines should have applied, based upon his view that § 4C1.1 should have applied to him and his view of the application of the safety valve, he would not have accepted the 63-month plea agreement. In *Dominquez*, however, the Tenth Circuit rejected a similar challenge. Among other things, the Tenth Circuit noted that the district court had conducted a thorough plea colloquy "that accurately informed [the defendant] of the potential penalties and direct consequences that he faced with respect to the charges to which he pleaded guilty." *Id*. at 1108. As a result, the defendant was "fully apprised of the direct consequences of his proposed guilty plea and thus knowingly and intelligently made it." *Id*. at 1107.

The same applies here. At his change of plea hearing Mr. Reyes was expressly informed that although he faced a 20-year potential maximum sentence he was entering into a plea agreement that called for a sentence of between 63–97 months and that the court had found that such an agreement was reasonable. And even though Mr. Reyes now argues that had he known of the potential impact of

(the not yet effective) § 4C1.1, he would not have accepted the plea agreement, that argument does not change the fact that he was fully apprised of the penalties and consequences of pleading guilty. There was no due process violation.

### C. *Certificate of Appealability*

Under Rule 11 of the Rules Governing § 2255 Proceedings, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the court must "indicate which specific issue or issues satisfy the showing." 28 U.S.C. § 2253(c)(3). To satisfy this standard, the applicant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).

For the reasons stated above, the court finds that Mr. Reyes has not satisfied this substantial showing standard. The court therefore denies a certificate of appealability as to its ruling on Mr. Reyes' § 2255 Motion.

## CONCLUSION

Accordingly, and for the reasons discussed above, the court has determined that Mr. Reyes is not entitled to relief.

THEREFORE, IT IS ORDERED that Mr. Reyes § 2255 Motion (ECF No. 1) is DENIED; and

IT IS FURTHER ORDERED that the United States' Motion for Order Waiving Attorney-Client Privilege and for Disclosure of Relevant Communications (ECF No. 7) is DENIED AS MOOT.

DATED this 30th day of April 2025.

BY THE COURT:

_____
Hon. Clark Waddoups
United States District Judge