## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALEJANDRO REYES-PANTOJA,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**<br><br>Case No.  2:24-cv-765-CW<br><br>Hon. Clark Waddoups |

This matter is before the court on Alejandro Reyes-Pantoja's Motion to Alter or Amend Judgment (the "Rule 59(e) Motion").  [ECF No. 10.]  Asserting that the court committed legal errors in its prior decision denying Mr. Reyes' § 2255 Motion (*see Reyes-Pantoja v. United States*, No. 2:24-cv-765, 2025 WL 1262739 (D. Utah April 30, 2025)), Mr. Reyes' Rule 59(e) Motion seeks reconsideration of that order pursuant to Federal Rule of Civil Procedure 59(e).  For the reasons discussed below, Mr. Reyes' Rule 59(e) Motion is denied.[1]

### LEGAL STANDARD

The scope of a motion under Rule 59(e) is limited.  As a procedural matter, such motion must be brought within a very short time frame—28 days from entry of

---

[1]    The factual background concerning Mr. Reyes' offense of conviction and other relevant legal and factual circumstances were discussed in the court's prior decision on Mr. Reyes § 2255 Motion (*see Reyes*, 2025 WL 1262739, at *1–7) and will not be repeated here.

the subject judgment.  FED. R. CIV. P. 59(e).  Substantively, a Rule 59(e) motion is

generally only available to "reconsider matters properly encompassed in a decision

on the merits."  *See Banister v. Davis*, 590 U.S. 504, 508 (2020) (cleaned up).  The

court may not consider new arguments or evidence.  *See id.* (citation omitted).

"'[R]econsideration' means just that:  Courts will not entertain arguments that

could have been but were not raised before the just-issued decision."  *Id.* at 516.

And as applicable here—and as just reaffirmed by the Supreme Court—when

a Rule 59(e) motion is filed in connection with a habeas proceeding, such a motion is

deemed to be "a limited continuation of the original proceeding—indeed a part of

producing the final judgment granting or denying habeas relief."  *Rivers v.

Guerrero*, 605 U.S. ___, ____ (U.S. June 12, 2025) (slip op. at 9) (quoting *Banister*,

590 U.S. at 521).  In this context, a Rule 59(e) motion "'suspends finality' of the

original [habeas] judgment so that the district court can 'fix any mistakes and

thereby perfect its judgment before a possible appeal.'"  *Id.* (quoting *Banister*, 590

U.S. at 516).[2]

---

[2]      For these reasons, the Government's argument that the court lacks jurisdiction to
review Mr. Reyes' Rule 59(e) Motion because it should be considered an improper second or
successive § 2255 motion is rejected.  In both *Banister* and *Rivers,* the Supreme Court
confirmed that a timely Rule 59(e) motion, which seeks correction of purported legal errors
by the court, is not a successive or second habeas petition.  *See Rivers*, 604 U.S. at ___;
*Banister*, 590 U.S. at 507, 517.

In its opposition brief the Government did not cite to or try to distinguish *Banister*,
which appears to be controlling on this issue.  Instead, the Government's brief cited to
Tenth Circuit decisions and non-precedential district court decisions, all of which predate
*Banister* by many years, to support its argument that because Mr. Reyes' Rule 59(e) Motion
seeks to "resurrect" or "reargue his previously articulated positions," it should be deemed
an improper second or successive habeas petition.  [*See* ECF No. 12 at 3–6.]  But as
*Banister* and now *Rivers* confirm, the standards cited by the Government, to the extent that
they remain applicable, appear to be appropriate only when a habeas plaintiff seeks to

## ANALYSIS

The main thrust of Mr. Reyes' Rule 59(e) Motion is that the court misconstrued the prejudice component applicable to his ineffective assistance of counsel claim. As noted in the court's prior decision; "Prejudice in this context means that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *See Reyes-Pantoja*, 2025 WL 1262739, at *2 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984). And, where, as here, the alleged deficiencies concern plea negotiations and sentencing, "the prejudice requirement can be established by showing that counsel's alleged deficient performance resulted in a more severe sentence." *Id.* (citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

### A. Application of Molina Martinez and Rosales-Mireles

In his Rule 59(e) Motion, Mr. Reyes asserts that the court failed to correctly apply two U.S. Supreme Court Decisions, *Molina-Martinez v. United States*, 578 U.S. 189 (2016) and *Rosales-Mireles v. United States*, 585 U.S. 129 (2018). Mr. Reyes claims that these cases stand for the proposition that whenever there has been an underlying United States Sentencing Guidelines range calculation error— even if the actual sentence imposed was below the correct Guidelines range—such

---

present new arguments or present new evidence in a Rule 59(e) motion. As viewed by this court, the central argument presented by Mr. Reyes in his Rule 59(e) Motion (while ultimately without merit), is not new and does not rely on new evidence. On July 28, 2025, after briefing was complete, the Government filed a supplement to its opposition brief in which it belatedly acknowledged that the *Banister* decision "abrogates its argument that the Court lacks jurisdiction to consider Defendant's Rule 59(e) motion, and it therefore withdraws that argument." [ECF No. 16 at 2.]

an error establishes the necessary prejudice to support an ineffective counsel claim.[3]

      For starters the relevancy of these decisions is in doubt.  First, neither case arose in the habeas context; rather, each was a direct appeal.  And neither case concerned constitutional claims of ineffective assistance of counsel.  Second, neither arose in the context of a Rule 59(e) motion.  And finally, and perhaps most importantly, unlike *Rosales-Mireles* and *Molina-Martinez*, there was no erroneous Guidelines range calculation at Mr. Reyes' sentencing.  The only Guidelines range calculated and presented to the court was, in fact, correct under then existing law.

      For example, in *Molina-Martinez*, the defendant entered a guilty plea.  At his sentencing the court relied upon a calculated Guidelines range of 77 to 96 months when it imposed a sentence of 77 months imprisonment—the "low end" of the range.  *See* 578 U.S. at 195.  On direct appeal, the defendant maintained (correctly) that the district court had miscalculated his criminal history points under the Guidelines and that the correct Guidelines sentencing range was 70 to 87 months.  *Id.* at 196-97.  In remanding for resentencing, the Court noted that in the context of a direct

---

[3]     Mr. Reyes did not fully explicate this argument in his § 2255 Motion.  Rather, his only citation to *Rosales-Mireles* arose in the context of his argument that his sentencing counsel was ineffective because he should have known that "[h]ad sentencing been postponed until after November 1, 2023, the [zero-point offender] reduction would have applied as a matter of law.  *See, e.g., Rosales-Mireles v. United States*, 585 U.S. 129 (2018) (holding that failure to correctly calculate the guideline range is plain error)."  [ECF No. 1 at 11.]  And there is no citation to or argument concerning *Molina-Martinez* in Mr. Reyes' § 2255 Motion, which is the decision that Mr. Reyes relies on most extensively in his Rule 59(e) Motion.  Nevertheless, the court has considered this plain error argument to have been raised, albeit just barely, in Mr. Reyes' § 2255 Motion so that it is appropriate to address it in the context of his Rule 59(e) Motion.  *Cf. supra* n. 2

appeal for plain error under Fed. R. Crim. P. 52(b), when a defendant like *Molina-Martinez* "shows that the district court *used an incorrect range*, he should not be barred from relief on appeal simply because there is no evidence that the sentencing outcome would have been different *had the correct range been used*." *Id.* at 200 (emphasis added). Thus, the court held that "a defendant *sentenced under an incorrect Guidelines range* should be able to rely on that fact to show a reasonable probability that the district court would have imposed a different sentence *under the correct range*. *Id.* at 204 (emphasis added).

*Rosales-Mireles* is almost a mirror image of *Molina-Martinez*. In *Rosales-Mireles* the district court double counted an assault conviction, which resulted in an erroneous criminal history score that yielded a Guidelines range of 77 to 96 months, when the correct range, absent the error, would have been 70 to 87 months. *See* 585 U.S. at 135. Thus, that error (just like the error in *Molina-Martinez*) increased the Guidelines range presented to the district court by at least seven months. The district court then sentenced the defendant to a 78-month term of imprisonment, which was at the "lower end of the Guidelines range that everyone thought applied." *Id.* On direct appeal the defendant argued for the first time that his sentencing under an incorrect Guidelines range amounted to plain error under Fed R. Crim P. 52(b).

Relying on *Molina-Martinez* the Supreme Court remanded for resentencing, noting that "an error *resulting in a higher range* than the Guidelines provide usually establishes a reasonable probability that a defendant will serve a prison

sentence that is more than 'necessary' to fulfill the purposes of incarceration." *Id.* at 139 (citations omitted). Further, the High Court noted that the fact that the defendant's 78-month sentence ended up falling within the corrected Guidelines range, does not "preserve the fairness, integrity, or public reputation of the proceedings." *Id.* at 144. In a footnote the Court indicated that "[i]n the ordinary case, proof of a plain Guidelines error that affects the defendant's substantial rights is sufficient to meet th[e] burden" that such an error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 144 n.4 (citations and quotations omitted).

As is apparent, the errors in *Molina-Martinez* and *Rosale-Mireles* are unlike those that occurred here. The only Guidelines "error" concerning Mr. Reyes was the inclusion of a single criminal history point for his trespass conviction. *See Reyes-Pantoja,* 2025 WL at 1262739 at *3. But as noted in the court's prior decision that "error" had no effect on any Guidelines range because, regardless of whether Mr. Reyes had one or zero criminal history points, his criminal history category remained a Category I, yielding the very same Guidelines range. *See id.* Accordingly, there was no Guidelines "error" that increased the Guidelines range for Mr. Reyes.

As asserted in his § 2255 Motion, Mr. Reyes' complaint is that because his criminal history should have been a zero, he may have been entitled to an additional 2-level decrease on his offense level under the Guidelines amendment contained in U.S.S.G. § 4C1.1 that was not yet effective at the time of his

sentencing.  *See Reyes-Pantoja,* 2025 WL 1262739, at *4.  But that is not a Guidelines calculation error under *Molina-Martinez* or *Rosales-Mireles*.

While Mr. Reyes' Presentence Investigation Report ("PSR") may have been in error for including his trespass conviction as criminal history, it was not in error in calculating the Guidelines range sentence applicable to him under then current and legally effective Guidelines.  Regardless of whether Mr. Reyes' criminal history points were zero or 1, he would still have fallen within Criminal History Category I, which when referenced against his calculated offense level of 29 presents the exact same sentencing range of 87 to 108 months as was identified in the PSR.  *See Reyes-Pantoja*, 2025 WL 1262739, at *3 (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") ch. 5, pt. A, Sentencing Table).  Thus, the Guidelines range presented in Mr. Reyes' PSR was not incorrect.  And Mr. Reyes has not presented any argument as to why his PSR was "erroneous" and that the Guidelines range calculated in the PSR was incorrect because it failed to adjust his offense level based on a Guidelines provision that was not yet effective.[4]  Therefore, to the extent that Mr. Reyes would like the court to read *Rosales-Mireles* and *Molina-Martinez* to stand for the proposition that a Guidelines calculation error is always presumptively prejudicial, that proposition is simply inapplicable here where there was no "error" in the Guidelines calculation that affected Mr. Reyes' sentence.

---

[4]    As previously noted, had the amendment under § 4C1.1 been applied, Mr. Reyes—as a criminal defendant with a zero criminal history—would have been eligible for a 2-level decrease in his offense level.  This may have lowered Mr. Reyes' offense level to a level 27, with a resultant Guidelines range of between 70 to 87 months.  *See Reyes-Pantoja*, 2025 WL 1262739, at *4.

Mr. Reyes' Rule 59(e) Motion also fails to address the role his Rule 11(c)(1)(C) plea agreement played in his sentencing. Unlike the defendants in *Molina-Martinez* and *Rosales-Mireles*, Mr. Reyes expressly agreed to a specified sentencing range that did not have to fall within any calculated Guidelines range.[5] Instead, and pursuant to his Rule 11(c)(1)(C) plea agreement, Mr. Reyes and the United States agreed to a stipulated sentence of between 63 and 97 months. [*See* Statement by Def. in Advance of Plea of Guilty and Plea Agreement Pursuant to Fed. R. Crim. P. 11(c)(1)(C), *U.S. v. Reyes-Pantoja*, 2:22-cr-283 (D. Utah) ("Reyes Crim."), ECF No. 44, at 4 ¶ 12(b).] Notably, Mr. Reyes' stipulated sentencing range of 63 to 97 months imprisonment was not even a range that was available under any of the 387 potential sentencing ranges identified in the Guidelines.[6] In sentencing Mr. Reyes, it was the stipulated sentence in the plea agreement, combined with the court's analysis of the factors set forth in 18 U.S.C. § 3553(a), that guided the court in reaching its 63-month sentencing determination.[7] There

---

[5]    In *Molina-Martinez* the defendant entered a guilty plea without any plea agreement. *See United States v. Saul Molina-Martinez*, No. 1:12-cr-848 (S.D. Tex), ECF No. 11 at 1 ("The defendant pleaded guilty … No plea agreement was entered" and explaining that "the defendant would be subject to sentencing pursuant to the, now advisory, Sentencing Guidelines"). The same was true for Mr. Rosales-Mireles. *See United States v. Florencio Rosales-Mireles*, No. 1:15-cr-297 (W.D. Tex.), ECF No. 297 at 1 ("The defendant pled guilty to: illegal re-entry of a deported alien in violation of 8 U.S.C. § 1326. There is no plea agreement in this case.").

[6]    None of the ranges provided for in the Guidelines Sentencing Table reflect a range of 63 to 97 months imprisonment. *See* U.S.S.G. ch. 5, pt. A, Sentencing Table.

[7]    Specifically, Mr. Reyes' plea agreement noted that the "ultimate sentence" to be imposed by the district court will be determined "pursuant to 18 U.S.C. § 3553(a)," and that while the district court "must consider" the Guidelines the court "is not bound by" them. [*See* Reyes Crim., ECF No. 44 at 2 ¶3]; *but see Hughes v. United States*, 584 U.S. 675, 687 (2018) (noting that "in the usual case the court's acceptance of a [Rule 11(c)(1)(C)]

was no Guidelines error. In short, there is nothing about the sentencing of Mr. Reyes to a term at the low end of a non-Guidelines stipulated sentencing range that can be said to seriously affect "the fairness, integrity, or public reputation of judicial proceedings." *See Rosales-Mireles*, 585 U.S. at 132.

B.  *Mr. Reyes Was Not Prejudiced*

And even to the extent that *Rosales-Mireles* or *Molina-Martinez* would apply here, the court does not agree with Mr. Reyes' contention that those decisions evidenced any change in the prejudice analysis under the *Strickland v. Washington* standard for an ineffective assistance of counsel claim.

First, neither *Rosales-Mireles* nor *Molina-Martinez* involved any collateral review under § 2255 or any prejudice review under the *Strickland* standard. Both *Rosales-Mireles* and *Molina-Martinez* addressed prejudice in the content of a "substantial rights" plain error review on direct appeal.

Second, it does not appear that there is any difference in the prejudice standard in any event. Quoting *Molina-Martinez*, the *Rosales-Mireles* court concluded that a defendant could show that his substantial rights may have been affected if he can show a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *See Rosales-Mireles*, 585 U.S. at 134-35 (internal quotation marks omitted).[8] In *Strickland* the court concluded that an

_____

agreement and the sentence to be imposed pursuant to that agreement are 'based on' the defendant's Guidelines range").

[8]     To be sure, the court recognizes that in *Rosales-Mireles* the Supreme Court indicated that a Guidelines calculation error—in a case where the sentence was determined by the Guidelines—might, as a factual matter, establish such prejudice at least on a direct appeal.

attorney's deficient performance is prejudicial if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687-88, 694. The court does not glean any difference between these two prejudice assessments.

Moreover, in the context of a guilty plea challenged on ineffective assistance grounds in a collateral habeas proceeding, the Supreme Court has stated that the prejudice prong of *Strickland* requires the petitioner/plaintiff to "show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lee v. U.S.*, 582 U.S. 357, 364 (2017). "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citation omitted).

Nothing in Mr. Reyes's § 2255 Motion or his Rule 59(e) Motion establishes that he has met these requirements. Mr. Reyes has not presented any allegations or contemporaneous evidence to support any argument that he would not have entered a guilty plea. Nor does he argue such. Rather, he argues that he would not have entered into this specific plea agreement. He would have only entered an "open plea" of guilty and effectively thrown himself on the mercy of the court for sentencing under the Guidelines.

---

But, as noted above, here there was no Guidelines calculation error behind the sentence imposed on Mr. Reyes.

But an admission that he possessed almost 30 pounds of methamphetamine with an intent to distribute would have given rise to a mandatory minimum sentence of 10 years. By agreeing to enter into a Rule 11(c)(1)(C) plea, with the resultant filing of a Felony Information that re-charged Mr. Reyes with a crime punishable pursuant to 21 U.S.C. § 841(b)(1)(C), rather than under § 841(b)(1)(A), and an agreed-upon non-Guidelines stipulated sentencing range, Mr. Reyes and his counsel removed the possibility (however limited) of a 10-year sentence. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (providing that a person convicted of a trafficking crime involving "50 grams or more of methamphetamine … shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life").

It is true—as Mr. Reyes correctly argues—that he would likely have been entitled to a "safety value" reduction if he had entered an "open plea" to his original indictment. In that case he may have avoided a mandatory 120-month sentence even without the changed charge in the Felony Information. In return, however, the minimum sentence imposed upon him for such an open guilty plea would have been no less than 87 to 108 months. *See* U.S.S.G. § 5C1.2(a) ("Except as provided in subsection (b) … the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence …."). The plea agreement Mr. Reyes entered into—an agreement negotiated by his counsel—was very favorable to him because it reduced his potential sentence from a minimum of 87 months to just 63 months. It is therefore difficult to discern how it could have

been more rational for Mr. Reyes to pursue an open plea over a stipulated
sentencing range that reduced his potential prison sentence by two years.

While Mr. Reyes argues that his counsel should have informed him (and
presumably the court too) of the potential impact of the not yet effective "zero-point
offender" adjustment under § 4C1.1(a), it is just as difficult to understand how, even
if his counsel had done so, Mr. Reyes could have been prejudiced.  As previously
noted, § 4C1.1 was not effective when Mr. Reyes first agreed to enter his guilty plea.
And even if the court had in its discretion applied the § 4C1.1(a) adjustment and
adjusted Mr. Reyes' offense level down by two levels, his Guideline range sentence
would have been 70 to 87 months, which is still a harsher sentence than 63-month
sentence imposed by the court.  And given the application of the safety valve under
§ 5C1.2(a), it still remains that the very lowest Guidelines sentence the court could
have imposed on Mr. Reyes under an open plea was the 70 months applicable under
his adjusted offense level—a sentence that is clearly more detrimental to Mr. Reyes
than 63 months that was imposed.[9]

On these facts, the court finds no error in its citation to and reliance on the
Tenth Circuit's decision in *U.S. v. Orozco-Sanchez*, 804 F. App'x 952 (10th Cir.
2020), which held that a defendant, like Mr. Reyes, who claims he would have
entered an open plea rather a than accepting the government's plea offer, "must

---

[9]    As noted in the court's prior order on Mr. Reyes' § 2255 motion, this determination is
supported by the policy statement contained in U.S.S.G. § 1B1.10(b)(2)(A), which bars any
sentencing reduction from an amendment "to a term that is less than the minimum of the
amended guideline range," which in this case was 70 months.  [*See* ECF No. 8 at 8.].

show a reasonable probability that entering an open guilty plea would have been more favorable to him" in order to establish the prejudice required to prevail on an ineffective assistance of counsel claim under *Strickland*.  *Id.* at 960.

Mr. Reyes has challenged the court's reliance on *Orozco-Sanchez* by, among other things, claiming that it should not be followed because it runs afoul of the presumptive prejudice applicable to a Guidelines calculation error as recognized in *Rosales-Mireles* and *Molina-Martinez*.  But *Orozco-Sanchez* concerned counsel's misestimation of the potential Guidelines range and not a miscalculation of the Guidelines range by the sentencing court.  Thus, *Orozco-Sanchez* more closely aligns with the underlying basis of Mr. Reyes' ineffective assistance claim.  As noted above, the court did nor err in calculating the Guidelines range applicable to Mr. Reyes.  There is no dispute that Mr. Reyes fell into a criminal history category of I, with a resultant range of 87 to 108 months.  That his attorney may have been in a position to argue that a not-yet effective Guidelines amendment creating § 4C1.1, may have allowed the court to exercise its discretion to further reduce Mr. Reyes's offense level, which might have, in turn, reduced the applicable Guidelines range, is simply not a Guidelines calculation error.  And Mr. Reyes' cites no authority that counsel's failure to raise such an argument amounts to a Guidelines "error" under *Rosales-Mireles* or *Molina-Martinez*.[10]

---

[10]    It is worth noting that the court was first informed that Mr. Reyes would enter a guilty plea on March 29, 2023.  [*See* Reyes Crim., ECF No. 36.]  And the Felony Information to which he eventually pleaded guilty was filed on April 14, 2023.  [*See* Reyes Crim., ECF No. 37.]  Each of these events took place before the amendment creating § 4C1.1 was submitted to Congress.  *See* 88 Fed. Reg. 28254 (May 3, 2023) (notice that Amendment 821 to the Guidelines, which created the zero-point offender adjustment, was on that date

C.  *Mr. Reyes' New Factual Arguments Fail Procedurally and Substantively*

In his Supplemental Memorandum in support of his Rule 59(e) Motion [*see*
ECF No. 11 (sealed)], Mr. Reyes' counsel suggests that new facts he has learned
may have driven the non-Guidelines stipulated sentencing range the parties agreed
to in Mr. Reyes' Rule 11(c)(1)(C) plea agreement and also show a reasonable
probability that Mr. Reyes "would have gotten a sentence lower than 63 months."
There are a few issues with this argument, however.

Putting aside the propriety of filing a "Supplemental  Memorandum," the fact
is that the court had been made aware of these factual issues, which were discussed
in open court during Mr. Reyes' sentencing and considered by the court before it
imposed a 63-month sentence on Mr. Reyes.  [*See* Hearing Transcript September 25,
2024, Reyes Crim., ECF No. 64 at 4–7.]  Moreover, as was noted in the court's prior
decision on Mr. Reyes' § 2255 Motion, Mr. Reyes actually received Guidelines
"credit" based upon his apparent limited role in the offense.  Specifically, in
calculating his Guidelines range the PSR decreased his offense level by two-levels
under U.S.S.G. § 2D1.1(b)(18) because, among other things, Mr. Reyes was not
deemed an "organizer, leader, manager, or supervisor, of any other persons involved
in the offense."  [*See* PSR, Reyes Crim., ECF No. 50 (sealed) at ¶19 (citing U.S.S.G.
§ 5C1.2 (allowing application of the safety value if, among other things, "the

---

submitted to Congress and put out for public comment to be received by the Sentencing
Commission no later than June 23, 2023, and was to be effective on November 1, 2023).
And, of course, Mr. Reyes was sentenced on September 23, 2023, before the effective date of
§ 4C1.1.

defendant was not an organizer, leader, manager, or supervisor, of any other persons involved in the offense")).]  In addition, the remainder of the Supplemental Memorandum raises new arguments concerning the sentencing of drug couriers that were not raised in Mr. Reyes' § 2255 Motion and, therefore, may not be considered by the court under Rule 59(e).[11]

## CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing § 2255 Proceedings, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the court must "indicate which specific issue or issues satisfy the showing." 28 U.S.C. § 2253(c)(3).  To satisfy this standard, the applicant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional

---

[11]    The Supplemental Memorandum also identifies recently promulgated but not yet effective Guidelines amendments that, arguably, might support additional downward adjustments for a defendant who participated at the "lowest level of drug trafficking functions," and suggests that if Mr. Reyes were to be sentenced today an even lower Guidelines range would have been calculated.  But as noted above, the court was made aware of the factual basis for Mr. Reyes' claim that he was a minor or minimal participant in his drug trafficking activities when it sentenced him.  [See Hearing Transcript September 25, 2024, Reyes Crim., ECF No. 64 at 4–7.]  Further, to the extent that Mr. Reyes is now arguing that application of a new Guidelines amendment may result in a lower Guidelines sentencing range, neither Mr. Reyes' Rule 59(e) Motion nor his § 2255 Motion is the proper procedural context to address such an argument.  That appears to be more properly presented through a motion brought under 18 U.S.C. § 3582(c)(2), a right that Mr. Reyes may have waived in his plea agreement.  [See Reyes Crim., ECF No. 44 at 5 ¶12(d)(2)]; see, e.g., United States v. Frierson, 308 F. App'x 298, 302 (10th Cir. 2009) (upholding plea agreement waiver not to bring a motion under § 3582(c)(2)).

claims debatable or wrong.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004)

(quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).

The court finds that Mr. Reyes has not satisfied this substantial showing

standard. The court therefore denies a certificate of appealability as to its ruling on

Mr. Reyes' Rule 59(e) Motion.

## CONCLUSION

Accordingly, and for the reasons discussed above and in the court's April 30,

2025, Memorandum Decision and Order Denying Mr. Reyes' § 2255 Motion, the

court has determined that Mr. Reyes is not entitled to relief.

THEREFORE, IT IS ORDERED that Mr. Reyes' Rule 59(e) Motion [ECF No.

10] is DENIED.

DATED this 5th day of August 2025.

BY THE COURT:

_____
Hon. Clark Waddoups
United States District Judge